**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

----------------------------------------------------------- x
VIGILANT INSURANCE COMPANY a/s/o : CIVIL NO. 3:02-CV-1813 (AVC)
GERHARD SCHULMEYER :
:
Plaintiff, :
:
v. :
:
BARBARA NEWINGTON :
And :
NORTH STAMFORD TREE SERVICE :
And :
RICHARD LONGO d/b/a THE TREE GUY :
    Defendants. : MAY 28, 2004
----------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BARBARA NEWINGTON'S MOTION FOR SUMMARY JUDGMENT**

The Defendant, Barbara Newington, ("Newington") through her undersigned attorneys, hereby submits this Memorandum of Law, along with her Local Rule 56(a)(1) statement in support of her Motion for Summary Judgment against the Plaintiff, Vigilant Insurance Company ("Vigilant") a/s/o Gerhard Schulmeyer.

## I.    PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

This case concerns a limb on an Oak tree (the "Tree") falling during or around the time of a wind and rain storm. The Tree was located on the Defendant Newington's

Property ("Newington Property"), and the limb fell onto a greenhouse located on the Schulmeyers' property ("Schulmeyers' Property"). The Plaintiff's Amended Complaint, filed June 16, 2003 contains a count of negligence against the Defendant Newington[1], a count of negligence against the co-Defendant Richard Longo ("Longo") (a licensed arborist who in the past had done tree work on Newington's Property), and a count of negligence against North Stamford Tree Company (another entity that had performed tree work on Newington's Property).[2] In her Answer, Newington denied any negligence on her part. Newington also denies having any actual or constructive notice of the Tree having any defective condition.

No court in Connecticut has ever imposed upon a landowner an absolute duty to prevent damage to a neighboring landowner's property due to falling limbs from trees. In order to so hold, a court would have to ignore the fact that high winds and storms can cause the limbs of trees, or the tree itself, to fall even when the tree had no outward sign of a defective condition. This is exactly what the Plaintiff would ask the court to find in this case.

The courts in Connecticut have imposed upon a plaintiff the burden to show that the defendant knew, or should have known, of the tree's defective condition. The only evidence the Plaintiff can offer in support of its case is that during a period of time, in

---

[1] A count of trespass against Defendant Newington was withdrawn on September 11, 2003.
[2] A Rule 41 Dismissal as to North Stamford Tree Company has been stipulated to by the parties.

which the Schulmeyers were away on vacation, a limb fell from a tree ("Tree Limb") on Newington's Property and landed on a greenhouse on the Schulmeyers' Property. However, also during this time, a storm occurred causing significant amount of damage to trees throughout the town of Greenwich and to other trees on the Newington Property. Every witness who has been deposed, including Mr. and Mrs. Schulmeyer, have testified that the Tree in question was a beautiful tree, well shaped, with green leaves and no signs of fungus, decay or insect infestation.

Absent evidence that the Defendant Newington had actual or constructive knowledge of the Tree's defective condition, there can be no liability on the part of the Defendant Newington for the damage caused to the greenhouse on the Schulmeyers' Property. The undisputed facts do not support the Plaintiff's claim that the Defendant Newington was negligent since she never had any actual or constructive notice of the Tree having any defective condition. As such, the Defendant Newington is entitled to judgment as a matter of law.

## II.   STATEMENT OF FACTS

The Schulmeyer's Property on Field Point Circle in Greenwich, Connecticut adjoins the property of the Defendant Newington. The Tree was located near the property line dividing the two properties. The Tree was a beautiful, old, symmetrical oak

tree with healthy green leaves and no outward signs of a defective condition. (Gerhard Schulmeyer Depo., p. 23 and Longo Depo., p. 56). The Schulmeyers could see the Tree from their kitchen window and noted it was a beautiful tree. (Gerhard Schulmeyer Depo., p. 27 and Helga Schulmeyer Depo., pps. 14-15). Neither Gerhard nor Helga Schulmeyer ever noticed any signs of fungus or decay on the Tree. (Gerhard Schulmeyer Depo., p. 28 and Helga Schulmeyer Depo., pps. 14-15).

      The Defendant Newington could not see the Tree from her house but did pass it when she traveled back and forth on her driveway. Newington stated the Tree was a beautiful tree and that she too never saw any signs of decay, rot, insect infestation or any other defective condition. Nor, was she ever informed by the Schulmeyers or Longo, a licensed arborist employed by Newington, of any defective condition. (Newington Depo., pps. 32-38). This is because Longo never saw any outward signs of a defective condition, not when he cabled the tree 11 years ago or pruned at 7 years ago. Furthermore, Longo did not notice any defective condition of the Tree the six months prior to the Tree Limb falling when he worked on nearby trees. What Longo did notice was that the tree was a healthy tree with green leaves, no signs of fungus, falling bark or insect infestation. (Longo Depo., pps. 85-86).

      The Schulmeyers do not know the exact date that the Tree Limb fell allegedly causing damage to their greenhouse as they were away on vacation and it was not until

4

their return, on May 19, 2002, that they discovered their loss. (Gerhard Schulmeyer Depo., pps. 27-28). However, on Saturday, May 18, 2002, the town of Greenwich experienced a rain storm with winds severe enough to knock down trees in various parts of town. (Newington Depo., Exhibit A and Farley Depo., pps. 22-28). That same morning, Defendant Newington, also heard the sounds of high winds indicating a severe storm. (Newington Depo., p. 20). After the storm passed, Newington discovered a willow tree, located near her house, had fallen down as a result of the rain storm and accompanying winds. (Newington Depo., pps. 25, 70). Newington did not learn until the next day, when she received a phone call from the Schulmeyers, that a limb from the Tree had fallen onto the Schulmeyers' greenhouse, presumably also as a result of the high wind condition that accompanied the storm. (Newington Depo., pps. 22, 28). Vigilant, as subrogee of Gerhard Schulmeyer, has brought this action to recover the alleged damages to the greenhouse.

## III. ARGUMENT

A.    **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether the record

5

presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffacci, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 112 S. Ct. 152 (1991). A plaintiff [defendant] raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff [defendant]." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, *supra*, at 247-48. The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis. Celotex v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

When the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to

6

interrogatories in order to demonstrate a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Equally important, the non-moving party must produce evidence to show the existence of every element essential to its claim which bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

Jurisdiction of this court is invoked pursuant to 28 U.S.C. Section 1332 by reason of complete diversity of citizenship of the parties. As a court sitting in diversity, this court must apply the substantive law of the state of Connecticut. Erie Railroad v. Tompkins, 304 U.S. 64 (1938).

**B.  THE DEFENDANT NEWINGTON DID NOT HAVE ACTUAL OR CONSTRUCTIVE NOTICE OF ANY DEFECTIVE CONDITION WITH THE TREE AND THUS THE DEFENDANT NEWINGTON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

The Plaintiff has pled, in its negligence count against the Defendant Newington that,

> Defendant Newington, her servants, employees, agents and/or contractors, knew or should have known the tree, a portion which fell on the subject Property, was in a diseased, rotted or otherwise unhealthy condition.

Amended Complaint, ¶ 13. The depositions of all fact witnesses have been completed. It is clear from all of the testimony that the Defendant Newington, or any of her employees

7

or agents, did not know, nor could they have known, that the Tree was in a "diseased, rotted or otherwise unhealthy condition." Indeed, the evidence unquestionably shows there were absolutely no outward signs of any defect in the Tree that reasonably could have been noticed by Newington, her employees or her agents.

In order to create liability in a premises liability claim, the burden rests upon the plaintiff:

> first, to offer evidence sufficiently describing the condition of the [property] so as to afford a reasonable basis in the evidence for the jury to find that a defective condition in fact existed; and, secondly, to offer evidence from which the jury could reasonably conclude that the defendant had notice of this condition and failed to take reasonable steps to remedy it after such notice.

Drible v. Village Improvement Co., 123 Conn. 20, 23-24 (1937). The plaintiff must first establish the fact that a defect in fact existed. If it cannot be shown that a defect in fact existed, the defendant cannot be found liable and is entitled to summary judgment as a matter of law.

Thereafter, taking the plaintiff's allegation that a defective condition existed as true, the plaintiff still must show that the defendant had notice of such condition. In order to do so, the plaintiff must prove that the defendant had actual knowledge of the defective condition or constructive notice. See, Eastern Electric Construction Co. v. Ebasco

8

Services, Inc., 166 Conn. 298, 302, A.2d (1974); Monahan v. Montgomery, 153 Conn. 386, 390, 216 A.2d 824 (1966).

To establish liability for an injury caused by a falling limb, a plaintiff must establish that the landowner had either actual or constructive notice of the limb's defective condition. McDermitt v. Calvary Baptist Church, 68 Conn. App. 284, 296 (2002), *holding affirmed* 263 Conn. 378 (2003).

To meet the elements of a claim of premises liability, the plaintiff has the burden of establishing that "there were visible signs of decay or weakness of structure [tree]…and that the [defendant] failed to observe … but the reasonable care would have resulted in those signs being seen." McDermitt v. Calvary Baptist Church, 263 Conn. 378, 388 (2003) (citing trial court's proper jury instruction). The duty to take reasonable care exists in circumstances where a reasonably prudent owner or possessor, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered would occur, if reasonable care weren't taken. Id. The fact that a limb fell does not require a finding of negligence. McDermitt v. Calvary Baptist Church, 68 Conn. App at 296.

There is absolutely nothing in the record that indicates that the Defendant Newington had any actual or constructive knowledge of any defective condition with the Tree. What the record does show is that the Tree was by all appearances a healthy tree,

9

covered with green leaves with no sign of any decay, rot, insect infestation or defective condition. As such, the Defendant Newington is entitled to judgment as a matter of law.

**1.     There is no genuine issue of material fact that the Tree had any outward signs of a defective condition**

The Tree could be seen from the Schulmeyers' kitchen window and was described by the Schulmeyers as a "beauty of a tree" with green leaves and no outward signs of decay, rot, fungus or other defective condition. (Gerhard Schulmeyer Depo., pps. 23, 27 and Helga Schulmeyer Depo. p. 15). The Schulmeyers never gave notice to the Defendant Newington of any defective condition because they never saw any problem with the Tree. In fact, several years prior to the limb falling, the Schulmeyers had the Tree pruned by their own tree service, Alpine ("Alpine"). At the time of the pruning, the Schulmeyers did not note any signs of decay, rot or defective condition nor did they recall Alpine advising them of any problem. (Gerhard Schulmeyer Depo., p. 23).

The Defendant Newington could not see the Tree from her home but would pass the Tree as she traveled down her drive to and from her home. Newington never saw any signs of rot, decay or defective condition, nor did her licensed arborist, Longo. (Newington Depo., pps. 32, 74). In the six months prior to the Tree Limb falling, Longo worked on nearby trees and was able to observe that the Tree was a healthy tree with no outward signs of fungus, insect infestation or decay. (Longo Depo., pps. 59, 60, 85-86).

10

Because there was no visual sign of decay, the Defendant cannot, as a matter of law, be held liable for negligence under basic premise liability theories. <u>McDermitt</u>, 263 at 388.

**2.    <u>There is no genuine issue of material fact that the Defendant Newington did not have actual or constructive notice of any defective condition</u>**

There is absolutely no evidence to indicate that the Defendant Newington had actual knowledge of any defective condition of the Tree. Similarly, there is absolutely no evidence sufficient to impart such knowledge to the Defendant Newington since neither Schulmeyer, Newington, nor Longo saw any visual signs of a defective condition or were aware of any defective condition.

In overturning the trial courts judgment for the plaintiff and denial of the defendant's motion for judgment not withstanding the verdict and motion to set aside the verdict, the Connecticut Supreme Court in <u>Derby v. CT Light and Power</u>, 167 Conn. 136 (1974) held that, as to a landowners liability, no duty arises where there is neither actual knowledge or imputed knowledge. In <u>Derby</u>, a young child was injured while playing on property owned by the landowner, an electrical utility company. The child slipped on a rotten tree limb which caused her to fall. Because of the insufficiency of evidence that the defendant had actual knowledge of the tree's condition and because there was no

evidence sufficient to impute such knowledge to the defendant, the Supreme Court overturned the trial court and directed the trial court to enter judgment for the landowner.

In another case similar to the present controversy, the court ordered judgment for the defendants holding the plaintiff failed to establish negligence.  Metropolitan Property & Casualty Ins. Co. v. Town of Fairfield, 2002 Conn. Super. LEXIS 2884 (2002).  In Metropolitan, a tree fell during a storm into the plaintiff's bedroom.  The town was not found to be negligent in that the homeowner had never complained to the town of the poor condition of the tree.  This was despite the fact that the tree had previously been filled with cement presumably because of a large fissure and even though the town had previously pruned the tree.  The court held that no testimony was offered that a reasonable tree warden or any other person should or would have been able to detect the extent of the interior rot in the tree before it fell.  Id., at *11.  Despite the tree being filled with cement, the court did not consider this notice of an unsafe condition.  Id., at *18.  The court also found fault with the plaintiff completely ignoring the unusual weather conditions that occurred the night the tree fell.  Id., at *18.

In an action in which an overhanging limb of a large maple tree fell during a heavy windstorm and seriously injured the son of the adjoining landowners while he was in his parents' driveway, the court in Ivancic v. Olmstead, (1985) 66 N.Y.2d 349, 488 N.E.2d 72, 54 A.L.R.4th 523, *motion den* 67 N.Y.2d 754, 490 N.E.2d 1229 and *cert den* 106 S.Ct.

1975, found that no liability attached to the tree owner, since she had no actual or constructive knowledge of the defective condition of the tree.

The <u>Ivancic</u> court noted that none of the witnesses who had observed the tree prior to the fall of the limb testified as to noticing so much as a withered or dead leaf, barren branch, discoloration, or any of the other indicia of disease which would alert an observer to the possibility that the tree or one of its branches was decayed or defective. The court stated that the tree owner owed no duty to the adjoining landowners to check her trees consistently and constantly for nonvisible decay and that she was required to take reasonable steps to prevent harm only when the decay was readily observable. Reversing the trial court on the ground that the son failed to establish a prima facie case of negligence, the court found that there was no evidence from which the jury could conclude that the tree owner should reasonably have realized that a potentially dangerous condition existed.

In this case, the Plaintiff has failed to meet its burden of establishing that the Defendant Newington had actual or constructive notice of any defective condition of the Tree. There is absolutely no evidence that there is a genuine issue of material fact as to any visible signs of decay or defective condition. A tree owner owes no duty to the adjoining landowner to check her trees consistently and constantly, for nonvisible decay

13

but is required to take reasonable steps to prevent harm only when decay is readily observable.  Ivancic v. Olmstead, 488 N.E.2d 72 (1985).

### IV.	CONCLUSION

WHEREFORE, as the Plaintiff has failed to raise a genuine issue of material fact regarding the Defendant Newington's alleged negligence, the Defendant Newington requests that her Motion for Summary Judgment be granted.

```
                                        DEFENDANT
                                        BARBARA NEWINGTON


                                    By: _____
                                        John H. Kane
                                        Fed. Bar #ct 12273
                                        E-mail: jkane@rc.com
                                        Robin P. Keller
                                        Fed. Bar # ct23564
                                        E-mail:  rkeller@rc.com
                                        Robinson & Cole LLP
                                        695 East Main Street
                                        Stamford, CT 06904
                                        Tel. No.: (203) 462-7500
                                        Fax No.: (203) 462-7599
```

## **CERTIFICATION**

This is to certify that on May 28, 2004, a copy of the foregoing was sent via federal express to: Stuart G. Blackburn, Esq., Law Offices of Stuart G. Blackburn, Two Concorde Way, P.O. Box 608, Windsor Locks, CT 06096 and Robert M. Caplan, Esq., The Atrium – Third Floor, 1900 Market Street, Philadelphia, PA 19103.

_____

Robin P. Keller