IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

2004 JUN 22 A 11: 05

U.S. DISTRICT COURT
HARTFORD, CT.

---

VIGILANT INSURANCE COMPANY as Subrogee :
of GERHARD SCHULMEYER,                   :
                                          :
                    Plaintiff,            :
                                          :
         v.                               :
                                          :
BARBARA NEWINGTON                         :   Case No.  3-02-CV1813 (AVC)
and                                       :
NORTH STAMFORD TREE SERVICE               :
and                                       :
RICHARD LONGO d/b/a THE TREE GUY,         :
                                          :
                    Defendants.           :

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO
DEFENDANT BARBARA NEWINGTON'S MOTION FOR SUMMARY JUDGMENT**

I.    **INTRODUCTION**

This action arises from property damage caused when a large tree limb fell from an 80-

foot oak tree (hereinafter "the subject tree") situated on defendant's property striking a

greenhouse structure located on plaintiff's insured's property (hereinafter "the incident").

Vigilant Insurance Company, plaintiff's property insurer, seeks recovery of $469,000 which it

paid on account of the property loss.

Defendant filed a Motion for Summary Judgment based on the argument there was no

actual or constructive notice of a defect in the subject tree prior to the incident.  Plaintiff

concedes it must show that defendant had either actual or constructive notice of the tree's

defective condition in order to successfully make out a negligence claim against defendant.

Plaintiff asserts, however, there are genuine issues of material fact in the record to support a

finding that Newington had either actual or constructive notice of the defective condition of the subject tree, and, therefore, Summary Judgment is not appropriate.

## II.    STATEMENT OF FACTS

Plaintiff's insureds, Gerhard and Helga Schulmeyer (hereinafter "the Schulmeyers"), own real property adjoining defendant Newington's property.  Both properties are located on Field Point Circle in Greenwich, Connecticut.  Prior to May 19, 2002, an 80 foot oak tree stood on Newington's property near the property line shared with the Schulmeyers.  At some point prior to May 19, 2002, a large limb from the subject tree fell off and crashed through a greenhouse on the Schulmeyer's property. (See Orszulak Dep., 2/24/04, relevant portions of which are attached as Exhibit "A," at p. 23, l. 1-7; Newington Dep., 2/23/04, relevant portions of which are attached hereto as Exhibit "B," at p. 48, l. 6-13).  The tree limb caused substantial damage to the greenhouse structure, its contents and to the trees and shrubbery surrounding it.

The Schulmeyers discovered the tree limb had damaged the greenhouse when they returned home from vacation. (See Schulmeyer Dep., 2/23/04, relevant portions of which are attached hereto as Exhibit "C" at p. 28, l. 12-20).  Newington subsequently contracted with Alpine Care of Trees (hereinafter "Alpine") to remove the tree from her property and from the Schulmeyers' greenhouse. (See Newington Dep. at p. 53, l. 16-23).  At Newington's direction, Alpine not only cut down the remains of the fallen tree limb, but also the entire portion of the tree that was still standing. (Orszulak Dep. at pp. 45-48).  The large tree stump was also ground so it was level with the property. (Orszulak Dep. at p. 47, l. 12-15)  All remnants of the tree were disposed of before any specific examination.  No branches or other portions of the tree were preserved by defendant or her representatives. (Orszulak Dep. at p. 45, l. 13-24; Newington Dep. at p. 60, l. 19-14; p. 61, l. 1-7).  Nor did defendant or her representatives photograph the tree in any detail. (Newington Dep. at. p. 60, l. 14-18).  Plaintiff's consultants were never given a

proper or reasonable opportunity to examine the tree or its remains. Newington voluntarily paid the Schulmeyers $6000 following the incident to help pay for the damages. (Newington Dep. at p. 53, l. 24; p. 54, l. 1-5). Unfortunately, this payment did not even begin to cover the damages, which were in excess of $490,000.

Peter Orszulak was one of the representatives of Alpine who assisted with the tree removal. When he arrived, he saw the tree had split apart with a big portion in the greenhouse and another big portion still standing. (See Orszulak Dep. at p. 22, l. 20-25; p. 23, l. 1-3). He noted that the portion of the tree that was still standing appeared to be decayed. (Orszulak Dep. at p. 38, l. 18-22). He testified that he determined there was decay based on his "visual inspection from the ground." (Orszulak Dep. at p. 38, l. 21-22). Mr. Orszulak prepared an invoice discussing the decay of the subject tree. (See invoice, a copy of which is attached hereto as Exhibit "D"). He also testified that he did not see any evidence that the tree was struck by lightning. (Orszulak Dep. at p. 26, l. 18-20).

Newington owns a densely wooded 6 acre property with somewhere between 20 and 50 trees on it, many of which are large deciduous trees. (Newington Dep. at. p. 17, l. 13-24; p. 13, l. 1-12). Newington testified that she employed a full time caretaker on the property named Ronald Scarpelli. (Newington Dep. at p. 6, l. 21-24; p 7, l. 1-3). Neither Scarpelli nor Newington were licensed arborists and had no formal or informal training or background in tree care and maintenance. (Newington Dep. at. p. 78, l. 23-24; p. 79, l. 1-7, 15-18). Despite her lack of training or expertise, Newington's regular practice was to walk around and look at all of the trees on the property with Scarpelli to determine if there were any problems. (Newington Dep. at p. 19, l. 13-19). When Newington determined work was necessary, she frequently hired defendant Richard Longo, a friend of Scarpelli. (Newington Dep. at p. 11, l. 4-6; p. 19, l. 24; p. 20, l. 1-3). Longo had been working with the trees on Newington's property for approximately

eleven years at the time the incident occurred. (Newington Dep. at p. 11, l. 2-3). Newington hired

Longo even though she knew he was self-employed and carried no liability insurance and despite

the fact that she required other contractors who worked on her property to have liability

insurance for their work. (Newington Dep. at p. 12, l. 21-24; p. 13, l. 20-23). Even though

Newington hired Longo to do the actual work, she made all of the final decisions regarding tree

care and maintenance on her property. (Newington Dep. at p. 12, l. 13-16; p. 19, l. 13-23).

Despite not having an opportunity to properly investigate the incident, plaintiff's adjuster

was able to take some photographs of the tree as it was being removed by Alpine. The

photographs of the remains of the subject tree and some of the actual cut logs from the subject

tree were subsequently examined by plaintiff's consultant, Joseph Maisano of Micha Tree and

Landscape Consultants. (See Maisano Report attached hereto as Exhibit "E"). From the

photographs, Mr. Maisano determined there was no evidence of proper cabling[1] to support the

upper limbs of the tree. (See Exhibit "E"). The tree failed at the area where three limbs came

together because it was a weak area which did not provide adequate support to the heavy limb

which ultimately broke free. (See Exhibit "E"). Additionally, based on the decayed logs with

internal rot, Mr. Maisano believes the subject tree would have had visible small leaves and dead

branches. (See Exhibit "E"). There was also an indication that there was visible decay on the

exterior of the trunk. (See Exhibit "E"). The photographs of the tree branches after being cut

down had evidence of decay and loss of bark. (See Exhibit "E"). In Maisano's opinion, the

weak area of the three trunks, the "V" crotch, should have been noticed and further examined by

an arborist, which would have resulted in the discovery of the internal decay. (See Exhibit "E").

---

[1] Cabling of trees is a process used by arborists to secure limbs which may be unstable due to the
structural or growth pattern of a tree.

North Stamford Tree Service (hereinafter "North Stamford")[2] sprayed the trees on Newington's property for many years. (Morano Dep., 2/24/04, relevant portions of which are attached hereto as Exhibit "F," at p. 22, l. 10-12). North Stamford did not spray the subject tree because oak trees generally do not require spraying. (Morano Dep. at p. 23, l. 21-25; p. 24, l. 1-12). During his deposition, William Morano of North Stamford, a licensed arborist, looked at several photographs of the subject tree and noted that it had an obvious "V" crotch. (Morano Dep. at p. 39, l. 16-19; p. 45, l. 15-22). He testified that "V" crotches are susceptible to separating because they are weak and also that "V" crotches often accumulate water. (Morano Dep. at p. 31, l. 6-18; p. 33, l. 3-9). He also testified that for a tree with a "V" crotch, he would have used steel rods to support the base of the tree where it split and also cables at the top in order to prevent it from breaking at the "V" crotch. (Morano Dep. at p. 32, l. 2-20). Based on the fact that the subject tree did not have any rods at the base and was not properly cabled, the weight of the tree continued to put pressure on the "V" crotch area until it could not support the weight of the tree anymore. (Morano Dep. at p. 46-47). He testified the tree "just couldn't support itself," and it failed at the "V" crotch. (Morano Dep. at p. 40, l. 7-15). In his opinion, based on the physics and structure of the tree, the incident could have happened on a windy day or a calm day. (Morano Dep. at p. 47, l. 13-24; p. 53, l. 11-16).

## III.    LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that a motion for summary judgment:

> [s]hall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as
> a matter of law.

---

[2] North Stamford was voluntarily dismissed from the litigation.

The purpose of summary judgment is to prevent the unnecessary trial which would result if there are no genuine issues as to material facts. If there is any evidence in the record from any source from which a reasonable inference as to the existence of a material fact can be made in the non-movant's favor, the moving party is not entitled to summary judgment. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 56 (2nd Cir. 1997). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

Material factual disputes are "genuine" if a reasonable jury could return a verdict for the non-moving party based upon the record as a whole. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 29 202 (1986); Weber v. Prudential Ins. Co. of America, 120 F. Supp. 2d 220 (D. Ct. 2001). When determining whether disputed facts are genuine, the court must review the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Savage v. Scripto-Tokia Corp., 266 F. Supp. 2d 344 (D. Ct. 2003).

Assessment of credibility and choices between conflicting versions of events are matters for the jury that are not resolvable by way of summary judgment. Rule v. Brine, Inc., 85 F.3d 1002 (2nd Cir. 1996). When reasonable persons, applying the proper legal standards, could differ in their responses to the question raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000). In this regard, granting summary judgment may not be based on a finding that the moving party's evidence is more "reliable" or "accurate" than the non-moving party's evidence. Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291 (5th Cir. 1987).

B.    **GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER OR NOT DEFENDANT NEWINGTON HAD ACTUAL OR CONSTRUCTIVE NOTICE OF DEFECTS IN THE TREE**

In order to prevail on its negligence claim, plaintiff must show there was a defect in the tree and also that the defendant had either actual or constructive knowledge of the defect in the tree. McDermott v. Calvary Baptist Church, 68 Conn. App. 284 (2002) aff'd 263 Conn. 378 (2003). Whether or not defendant had actual or constructive knowledge is a factual question for the jury to decide.

Plaintiffs believes that there were two separate defects in the tree: (1) the tree was not properly maintained and was inherently dangerous because of the "V" crotch and (2) there was visible decay and rot on the tree.

1.    **Genuine Issues of Material Fact Exist As to Whether Newington Had Actual or Constructive Notice that Tree Was Not Properly Cabled Or Supported**

Joseph Maisano and William Morano of North Stamford both believe that the subject tree was not properly maintained and that it was in a dangerous condition given the inherent weakness due to the obvious "V" crotch. (Morano Dep. at p. 42, l. 5-11; Exhibit "E"). Specifically, the tree's branches were not properly cabled or supported and its trunk was not reinforced in order to protect against the obvious dangerous conditions which existed because of the "V" crotch. The danger of "V" crotches due to their inherent weakness is very well known in the tree industry. (Morano Dep. at p. 31, l. 6-18). Morano testified that he would have placed a steel rod in the trunk of the tree in order to reinforce it. (Morano Dep. at p. 31, l. 24-25; p. 32, l. 1-20). Morano testified and Maisano opined in his report that they did not see any evidence of proper cabling. (Morano Dep. at p. 42, l. 5-11; Maisano Report). The improper cabling and failure to reinforce the trunk left the subject tree in an unreasonably dangerous condition, in which it was only a matter of time before it broke. Ultimately, the tree broke at the weak "V" crotch because the tree could no longer support its own weight.

There is ample evidence on the record to support the argument that Newington was aware of the aforementioned defective conditions, or at the very least should have been aware. Newington owns a six acre property with many large trees. With this type of estate property, given the fact there were large trees in close proximity to her neighbor's property, Newington had a duty to maintain the trees on her property so as to prevent property damage to adjoining landowners. One way of discharging this duty was to have in place a regular practice of tree inspection and maintenance. However, Newington took this duty upon herself without any training or experience. Newington was incapable of determining whether or not a dangerous and defective condition existed at the "V" crotch of the 80 foot oak tree overhanging the Schulmeyer's greenhouse because she was not trained to identify such conditions.

A second method Newington could have employed to discharge her duty to neighboring property owners would have been to hire a licensed arborist to inspect and maintain the trees on her property on an ongoing basis. However, Newington failed to fulfill her duty in this regard as she retained control over identifying problem areas and only hired Longo for specific duties. (Newington Dep. at p. 19, l. 13-24; p. 20, l. 1-14). Longo testified he did not make it a practice to observe the trees on Newington's property because he was not paid to do so. (Longo Dep., 3/10/04, relevant portions of which are attached as Exhibit "G," at p. 97, l. 5-9,). If a qualified arborist had been retained to maintain the trees on this estate property, the obvious "V" crotch in the subject tree would have been noticed and the recommendation for cabling the branches and supporting the trunk with a steel rod would have been made.

The dangers associated with "V" crotches are well known to people with a background in tree care. Unfortunately, Newington lacked any such background and, therefore, did not know how to properly maintain the tree.. However, that did not stop Newington from acting as her own arborist. In doing so, Newington essentially assumed a duty to properly maintain her trees

and proudly admitted that she has a set practice for tree care in which she walked the grounds with her caretaker and looks at the trees on the property to determine whether there were any problems. (Newington Dep. at p. 19, l. 13-19). In doing so, Newington assumed a duty and a responsibility to do something that she was not qualified to do. Newington did, however, admit that she was aware that big trees should be cabled because of the possibility of them falling. In fact, she testified that all the big trees on the property were cabled "just to be safe." (Newington Dep. at p. 32, l. 15-23). Accordingly, Newington was aware of the potential danger associated with large trees like the subject tree.

Newington breached her duty to safely maintain the trees on her property by failing to address a structural problem in the subject tree. At a minimum, numerous genuine issues of material fact exist as to whether Newington's failure to address the tree constitutes actual or constructive notice of the defect.

2.    **Genuine Issues of Material Fact Exist As to Whether Newington Had Actual or Constructive Notice that Tree Had Visible Rot and Decay**

There is also testimony on the record that there was visible decay on the tree. Peter Orszulak of Alpine testified that when they removed the tree, there was visible evidence of decay. (Orszulak Dep. at p. 38, l. 12-22). Most importantly, he testified that he saw the decay up in the tree from his "visual inspection from the ground." (Orszulak Dep. at p. 38, l. 21-22). Additionally, based on his review of the photographs of the tree and his examination of a few of the logs from the tree that remained on Newington's property, plaintiff's expert, Joseph Maisano agreed that there was visible decay in the tree. In his report, Maisano opines that there would have been obvious signs of decay on the exterior of the subject tree. (See Exhibit "E").

Although both Longo and Newington testified they did not see any signs of decay, their credibility is at issue. Both are defendants in this case and have a motive to protect themselves by denying observing evidence of decay. If either admitted observing decay, they would

9

basically be admitting actual notice of a defect. Newington's credibility is also called into question by the fact she testified that she and her groundskeeper did not see any problems with the tree after the incident and she was not aware that there was any decay even after the incident. (Newington Dep. at p. 8, l. 14-20; p. 9, l. 7-17). This is in direct contradiction to the testimony of the experts who looked at the tree and noticed the obvious decay. (See Exhibit "E"; Orszulak Dep. at p. 38, l. 18-22) In addition, Newington was provided with an invoice from Alpine, which referenced the decay.[3] (See Exhibit "D"). Credibility determinations are to be left up to the jury. The jury is entitled to determine whether or not they believe that Newington and Longo did not notice any visible decay or rot on the subject tree. At a minimum, the testimony of Orszulak and the report of Maisano raise genuine issues of material fact as to whether there was visible rot on the tree which would have provided actual or constructive notice of a defect to Newington. Summary judgment should be denied on this basis alone.

3.     **The Cases Cited By Defendant Are Distinguishable and Do Not Support Summary Judgment Under the Facts of This Case**

Defendant Newington relies on Metropolitan Property and Casualty Insurance Company v. Town of Fairfield, an unpublished decision from the Connecticut Superior Court, in support of her position. 2002 Conn. Super. LEXIS 2884 (2002). Metropolitan Property involved a judgment entered by the Court under the preponderance of the evidence standard, presumably following a bench trial, rather than on summary judgment or directed verdict. The posture of the decision is critical because the standards are completely different. The court in Metropolitan Property found that the plaintiff failed to establish defendants' negligence beyond a preponderance of the evidence. Id. at *10-11. The court did not find that as a matter of law defendants were not negligent. In Metropolitan Property, the Court was acting as the fact-finder

---

[3] Newington's testimony also lends credence to plaintiff's argument she was unqualified to determine the nature and extent of tree care and maintenance at her estate.

and was entitled to draw whatever inferences it chose from the evidence and to make credibility determinations. The Court does not have that right when determining a summary judgment motion. For purposes of summary judgment, the nonmoving party, in this case the plaintiff, is to be given the benefit of all inferences to be drawn from the facts.

In addition, the facts of Metropolitan Property are clearly distinguishable from the instant case. The plaintiff in Metropolitan Property was pursuing a claim against a town and the town's tree warden who estimated that he was responsible for between 300,000 and 500,000 trees in the town. Id. at *4. Newington was only responsible for the 20 - 50 trees on her property. Furthermore, the town tree Warden testified that there was no periodic inspection of all of the trees, whereas, Newington regularly walked the property with her groundskeeper and inspected the trees. Id. The town and its representative were also entitled to certain immunities for tort liability which do not apply to normal citizens. Id. at *14. The history of the tree in Metropolitan Property was unknown and it was unclear who had cabled it. Id. at *3. Newington made it very clear that she was responsible for the subject tree and directing any maintenance, including cabling, which was done to it.

The court in Metropolitan Property relied on the fact that plaintiff's tree expert, which coincidentally was also Joseph Maisano, could not describe any indication of decay or defect on the outer layer of the tree which would alert anyone to potential decay outside the tree. Id. at *6-7. However, in the present case, Mr. Maisano clearly states in his report that there were visible indications on the outside of the tree which should have led to a further inspection by a competent arborist. (See Exhibit "E"). In addition, the representative from Alpine testified that there was decay in the tree that was visible from the ground. (Orszulak Dep. at p. 38, l. 18-22). Moreover, in Metropolitan Property, the expert testified that the tree fell because of high winds. Id. at *7. In this case, there is a question regarding wind involvement. Further, Maisano

attributes the failure to improper cabling. (See Exhibit "E").  Additionally, William Morano of

North Stamford, another certified arborist, arrived at the same conclusion.  In fact, Morano

testified that due to the "V" crotch in the subject tree, it would have broken with or without wind

because of its condition. (Morano Dep. at p. 32, l. 2-20).  The subject tree fell because it was not

properly cabled or braced and, therefore, it could no longer support its own weight.  At the very

least, there is ample evidence in the record to create a genuine issue of material fact as to

whether the decay in the subject tree could have reasonably been discovered and also whether

the tree was properly cabled.  Moreover, there is a factual question of whether or not wind was

an issue on the date of the incident and whether such wind was a factor in the tree limb falling.

        Defendant also cites Ivancic v. Olmstead, a New York case in which the court set aside

a plaintiff's verdict on the basis that there was no evidence to put a reasonable landowner on

notice of the defective condition of a tree.  488 N.E.2d 72 (NY 1985).  In addition to being

nonbinding on this Court, the Ivancic decision is based the fact that there was "no evidence" that

there was a noticeable defect in the tree.  As discussed in the previous paragraph, there is

sufficient evidence in the record to support a finding that there was visible decay on the subject

tree which could have and should have been noticed by Newington.  There is also sufficient

evidence that she should have been aware that the tree was improperly cabled to prevent a failure

at the inherently dangerous "V" crotch.

> **C.**    **PLAINTIFF IS ENTITLED TO AN ADVERSE INFERENCE THAT THE
> SUBJECT TREE WAS VISIBLY DEFECTIVE BASED ON DEFENDANT
> NEWINGTON'S SPOLIATION OF THE EVIDENCE**

        Spoliation has been defined by the Second Circuit as "the destruction or significant

alteration of evidence, or the failure to preserve property for another's use as evidence in pending

or reasonably foreseeable litigation." Byrnie v. Town of Cromwell, Board of Education, 243

F.3d 93, 107 (2d Cir. 2001)(quoting Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.

1999)).  Spoliation of evidence which is germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998).  In order to receive an adverse inference, the party seeking it must show that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, such an obligation arises when the party should have known that evidence may be relevant to future litigation. Id.

Where there is intentional destruction of relevant evidence by an opposing party and the innocent party has produced some evidence in support of its claim, the intentional destruction of relevant evidence may push a claim that might not otherwise survive summary judgment over the line. Id.  In Byrnie, the Second Circuit relied on holding in Kronisch and overturned the dismissal of a civil lawsuit by the United States District Court for the District of Connecticut. 243 F.3d 93, 110-11.  The Court held that the evidence might not have been sufficient in itself to defeat summary judgment but it was when coupled with the allowable inference of spoliation. Id.

It is clear that after the incident occurred, the tree's remains were critical evidence, which Newington failed to preserve.  Newington admits that she directed Alpine to cut down the portion of the subject tree that was still standing following the incident and to remove all of remains from her property. (Newington Dep. at p. 53, l. 16-23).  In addition, the trunk of the tree was shredded by Alpine at the direction of Newington (Orszulak Dep. at p. 47, l. 12-15).  Although there was no litigation pending at the time of the destruction, Newington was on notice of the substantial damage to her neighbor's property and it is reasonable to infer she should have known that the evidence could be relevant to future litigation.  Newington destroyed the evidence, despite the fact that she knew her neighbors had suffered substantial property damage.  In fact, Newington voluntarily paid the Schulmeyers $6,000 because she felt bad about the damages. (Newington Dep. at p. 53, l. 24; p. 54, l. 1-5).  Neither Newington, her contractor, nor

her insurance company took any photographs of the subject tree before it was cut down and removed. (Newington Dep. at p. 60, l. 14-18).

As a result of the destruction of the subject tree, plaintiff's expert was unable to examine the tree in its immediate post-incident condition in order to determine the extent of the decay. Fortunately, plaintiff's expert was able to view limited photographs taken by plaintiff's adjuster and the remains of a few of the logs from the tree that remained on the property. Despite this limited post-incident inspection, plaintiff is severely prejudiced by its inability to conduct a detailed inspection of the tree. While plaintiff's expert was able to draw some conclusions based on his investigation, he will invariably be cross-examined on the fact that he did not see the actual tree. This could severely jeopardize plaintiff's chances of prevailing at trial. Accordingly, plaintiff is entitled to an adverse inference instruction to the jury which allows the jury to infer that had the subject tree not been destroyed, there would have been visible damage of rot and decay and also of the improper cabling. The evidence on the record coupled with this inference is enough to create a genuine issue of material fact so as to defeat summary judgment.

**D.      DEFENDANT NEWINGTON WAS RESPONSIBLE FOR DEFENDANT LONGO'S CONDUCT BY KNOWINGLY ALLOWING HIM TO WORK ON HER PROPERTY WITHOUT LIABILITY INSURANCE**

There is evidence on the record to support that Longo was negligent in failing to properly cable, notice the decay or reinforce the trunk of the subject tree.[4] Under Connecticut law, an employer is not ordinarily responsible for independent contractors she hires; however, there are exceptions to this rule. Pelletier v. Sordoni/Skansa Constr. Co., 264 Conn. 509, 517 (2003). Among the exceptions recognized by Connecticut courts are situations where: (1) the contractee employs an incompetent and untrustworthy contractor; (2) the work contracted for may cause a

---

[4] Longo has never appeared or answered plaintiff's complaint. A request for default judgment against Longo has recently been filed by the Court.

nuisance; and (3) where the contractee assumes control over the work. Id. at 518. Plaintiff believes that each of these exceptions are applicable to the present facts.

Newington hired Longo and allowed him to work on her property despite the fact she was aware he did not maintain any liability insurance. (Newington Dep. at p. 12, l. 21-24). Newington did so despite the fact that she required other contractors working on her property maintain liability insurance. (Newington Dep. at p. 13, l. 20-23 ). Newington was also aware that Longo was working in an area on her property which was near the property line of the Schulmeyers. By allowing Longo to work in that area, Newington knowingly subjected her neighbor's property to a risk of damage by Longo's negligence in failing to recognize a structural defect and/or decay in the subject tree. Longo can be considered an incompetent and untrustworthy contractor by virtue of the fact he did not maintain liability insurance. Because Longo is self-employed and uninsured, he is basically immune from any liability for his negligence. It would be unfair and against public policy to allow a neighboring property owner to hire such a contractor, especially one whose work involves the removal of tree branches and of entire trees, and not hold that person responsible for damage to the neighbor's property as a result of the uninsured contractor's negligence. This is dangerous work that if done improperly can have catastrophic consequences. It is mere fortuity that no person was injured as a result of defendant's negligence, however, substantial property damage occurred. By knowingly permitting Longo to do tree work at her property without liability insurance, Newington assumed the risk of his actions and ultimately the responsibility for any damage caused by Longo's negligence.

In addition, Newington contracted with Mr. Longo for tree work, which if not done properly could result in a nuisance consisting of a tree or its branches falling onto a neighbor's property. A nuisance is the interference with the use and enjoyment of land. Pestey v. Cushman,

259 Conn. 345, 352 (2002). A tree falling onto a neighbor's property could constitute a nuisance. The law of private nuisance springs from the general principle that "it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor." Id. (quoting Nailor v. C. W. Blakeslee & Sons, Inc., 117 Conn. 241, 245 (1933)). Accordingly, Newington can be held liable for Longo's negligence by virtue of the fact that she hired him to do work which could result in a nuisance.

Finally, Newington exercised a sufficient degree of control over Longo to make her responsible for his actions. She proudly testified that she made all of the final decisions on the tree care. (Newington Dep., at p. 19, l. 20-23). She also testified that she looked at the trees and determined when Longo was to be called. She controlled the work that Mr. Longo did and directed him where he would work. (Newington Dep., at p. 19, l. 13-19).

Newington hired and exercised control over a contractor who was incompetent by virtue of his lack of liability insurance to do tree work, which is the type of work that obviously could have created a nuisance if not done properly. Accordingly, she should be held vicariously responsible for his negligence in failing to identify obvious defects in the tree.

## IV.    CONCLUSION

On the basis of the facts and authorities cited above, plaintiff respectfully requests this Honorable Court deny the Defendant's Motion For Summary Judgment.

Respectfully submitted,

COZEN O'CONNOR

BY:_____
ROBERT M. CAPLAN, ESQUIRE
Fed. Bar #CT24719
1900 Market Street
Philadelphia, PA 19106
215-665-6968

16

LOCAL COUNSEL
STUART G. BLACKBURN, ESQUIRE
Law Offices of Stuart G. Blackburn
Fed. Bar #CT00686
Two Concorde Way
P.O. Box 3216
Windsor Locks, CT 06096-3216
(860) 292-1116
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

Robert Caplan, Esquire, attorney for plaintiff, hereby certifies that a true and correct copy of the foregoing Opposition To Defendants' Summary Judgment Motions and the Accompanying Memorandum of Law, Exhibits and Local Rule 56(a)(1) Statement, were served this 21st day of June, 2004, via Federal Express as follows:

        Robin Keller, Esquire
        Robinson & Cole
        695 East Main Street
        Stamford, CT 06904
        Counsel for Defendant Newington

BY: _____
       Robert M. Caplan, Esquire