UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 JUL -1 A 11: 38
U.S. DISTRICT COURT
HARTFORD, CT.

----------------------------------------x
VIGILANT INSURANCE COMPANY a/s/o       : CIVIL NO. 3:02-CV-1813 (AVC)
GERHARD SCHULMEYER                     :
        Plaintiff,                     :
v.                                     :
BARBARA NEWINGTON                      :
        And                            :
NORTH STAMFORD TREE SERVICE            :
        And                            :
RICHARD LONGO D/B/ THE TREE GUY        :
        Defendants.                 x    JUNE 30, 2004
----------------------------------------

**DEFENDANT BARBARA NEWINGTON'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

The Defendant, Barbara Newington, ("Newington") through her undersigned attorneys, hereby submits this memorandum of law in further support of her motion for summary judgment against the Plaintiff, Vigilant Insurance Company ("Vigilant") a/s/o Gerhard Schulmeyer. Specifically, Newington wishes to address the alleged factual issues and arguments made by Plaintiff in its opposition papers dated June 21, 2004.

**I.      ARGUMENT**

Plaintiff has failed in its Memorandum of Law in Support of its Opposition to Defendant Barbara Newington's Motion for Summary Judgment, dated June 21, 2004 ("Opp'n Brief"), to designate specific facts showing that there is a genuine issue for trial. Plaintiff has also failed to point to any evidence that Newington had actual or constructive notice of any defect in the tree in question (the "Tree"). No jury could reasonably conclude that Newington had notice of a defective condition in the Tree and failed to take reasonable steps to remedy it after such notice. <u>Dribble v. Village Improvement Co.</u>, 123 Conn. 20, 23-24.

STAM1-760506-2

A.  **PLAINTIFF DOES NOT PROVIDE ANY FACTS TO OVERCOME THE ACTUAL OR CONSTRUCTIVE NOTICE REQUIREMENT**

Plaintiff concedes that in order to prevail on its negligence claim, it must show that there was a defect in the Tree and also that the defendant had either actual or constructive knowledge of the defect in the Tree. (Opp'n Brief, p. 7 *citing* McDermott v. Calvary Baptist church, 68 Conn. App. 284 (2002) *aff'd* 263 Conn. 378 (2003)).

To avoid summary judgment, the Plaintiff claims that there were two separate defects in the Tree the Newington had actual or constructive notice of: (1) the Tree was not properly maintained and was inherently dangerous because of the "V" Crotch; and (2) there was visible decay and rot on the Tree. (Opp'n Brief, p. 7).

In terms of actual notice, there is absolutely <u>no</u> evidence to even suggest that Newington had actual notice of any alleged defect with the Tree. Newington testified that she did not see anything wrong with the Tree prior to the incident in question. (Newington Tr., attached hereto as Ex. A., p. 32, 1.6-14). Similarly, all of the other witnesses who saw the Tree prior to the incident in question testified that they did not see anything wrong with the Tree. (Richard Longo Tr., attached hereto as Ex. B, pp. 56, 1. 21-25, 60, 1. 17-19, 85, 1. 16-25, 86, 1. 1-7; Gerhard Schulmeyer, Tr., attached hereto as Ex. C, pp. 18, 1.23-24, 23, 1.10-12, p. 27, 1.8-13; Helga Schulmeyer, Tr., attached hereto as Ex. D, pp. 14, 1.9-12, 15, 1. 17-19). As such, it is impossible for the jury to conclude that Newington had actual notice of any defect with the Tree prior to the limb (the "Limb") falling off.

Plaintiff's claim that the Tree was not properly maintained and inherently dangerous because of allegedly improper cabling and the existence of a supposed "V" crotch is a smoke screen. Whether or not the Tree had a "V" crotch or was properly cabled is immaterial and does not provide constructive notice of any defect in the Tree. Not one witness testified that the Tree was not properly maintained and not one witness testified that the Limb at issue in this case was attached to the Tree as a "V" crotch since once the Limb had split from the Tree, it was impossible to say with certainty if the intersection of the Limb to the Tree was a "V" or "U" crotch. (Peter Orszulak Tr., attached hereto as Ex. E, p. 67, 1. 18-22; William

2

Morano Tr., attached hereto as Ex. F, p. 31, l. 6-18). Furthermore, there is no evidence to suggest that a "V" Crotch in and of itself would be a defect with the Tree. (Morano Tr., p. 31, l. 6-18; Orszulak Tr., p. 67, l. 20-22; Longo Tr. p. 63, l. 21-25, p. 64, l. 1-15, p. 65, l. 3)

Visible decay or rot on the outside of the Tree was <u>not</u> observed by <u>any</u> witness who physically saw the Tree before or after it fell. Not one witness including the Plaintiff's adjustor and the Schulmeyer's tree man stated that there was visible decay on the outside of the Tree. Plaintiff in its Opp'n Brief claims that Defendants Newington and Longo did not see decay because they are bias. (Opp'n Brief p. 9 and Pl. 56(a)(2) ¶¶24,26,27,30). Even without the testimony of Defendants Newington and Longo, none of the other witnesses saw any decay or rot on the outside of the Tree. (Gerhard Schulmeyer, Tr. pp. 18, 1.23-24, 23, 1.10-12, p. 27, 1.8-13; Helga Schulmeyer, Tr. pp. 14, 1.9-12, 15, l. 17-19; Gerald Murray Tr., attached hereto as Exhibit G, p. 44, 1.10-14). As such, there is absolutely no factual basis for the Plaintiff's claim that Newington had actual or constructive notice of any defect.

**B.    THE EVIDENCE PRESENTED BY PLAINTIFF DOES NOT CREATE AN ISSUE OF FACT**

Central to Plaintiff's opposition to Newington's Motion for Summary Judgment is its reliance upon the testimony of Peter Orszulak ("Orszulak"), the testimony of William Morano ("Morano") and the opinion of Plaintiff's designated expert, Joseph Maisano ("Maisano"), as to the condition of the Tree and the alleged defects. A review of Plaintiff's papers, however, reveals that Plaintiff mischaracterizes this evidence in an effort to manufacture a material issue of fact where one does not exist.

**1.    There is no evidence in the record that, prior to the Limb falling, there was visible rot and decay on the Tree**

Plaintiff repeatedly seeks to manufacture a material issue of fact where one does not exist by claiming, "[t]here is evidence in the record that the Tree had visible rot and decay." (Opp'n Brief, p.7,9,10,12 *citing* Orszulak Tr. at p. 38, l. 18-22 and the Maisano Report, attached hereto as Exhibit H).

**a.    The Orszulak deposition and Exhibits attached thereto clearly refer to decay <u>in the Tree</u>, not on the Tree and not visible until the Limb had broken off.**

3

When Mr. Schulmeyer discovered the Limb had fallen and damaged his greenhouse, he called Alpine Care of Trees ("Alpine"), the tree company the Schulmeyers regularly used to care and maintain their trees. (Orszulak Tr., p. 18, l. 11-24) Orszulak, an employee of Alpine and the individual who regularly maintained the Schulmeyers trees, came in response to the Schulmeyers telephone call. Orszulak observed that there was observable decay in the Tree where the Tree had split apart. In particular, Orzulak testified when asked about his comment on the bottom of Exhibit 7-I, an invoice he first prepared for the work to be done on the Tree, stated on page 38:

```
Line 11 Q:    Would you read that for me?
Line 12:    A:    "Variables: Area we have to work with and the decay in the Tree might
be more severe than our visual inspection."
Line 18:    Q:    Are you saying in that particular line that you found there was decay in
this Tree?
Line 20:    A:    Yes.
Line 21:    Q:    And you determined that how?
Line 22:    A:    By a visual inspection from the ground.
```

Nothing in Orszulak's testimony supports Plaintiff's claim that there was visible rot or decay prior to the Limb falling. Plaintiff's attempt to mischaracterize this testimony in an attempt to provide a basis for raising a genuine issue of material fact is misleading to the Court. Orszulak testified that the visual evidence of decay was <u>after</u> the Tree split. In his explanation of why on Exhibit 7-J, a work order for the crew, he checked "hollow decay in Tree" under the "Hazard" listing on the work order Orszulak stated on page 51 of his deposition:

```
Line 15:    Q:    And why was that a hazard?
Line 16:    A:    Because there was some visual evidence that there might have been some
decay after the Tree split, that we couldn't see it, and we always want to tell our guys to be overly
prepared for any type of hazards.
```

### b.   Maisano's Report is inadmissible under Rule 702 in that it is unreliable, speculative and not based on verifiable propositions of fact.

Maisano's report, which is submitted as an exhibit in opposition to the Newington's Motion for Summary Judgment, is hearsay evidence and is therefore inadmissible. Additionally, Maisano's opinions, as expressed in his report, are inadmissible under Rule 702 of the Federal Rules of Evidence.

4

In determining whether an expert opinion is sufficient to withstand a motion for summary judgment, courts undertake a detailed inquiry into the admissibility of the proffered testimony. In Re Agent Orange Product Liability Lit., 611 F. Supp. 1223, 1249 (S.D.N.Y. 1985). Experts must ground their opinions on verifiable propositions of fact. "If an expert's opinions rest on pure speculation or are directly contradicted by the factual record or are otherwise unworthy of even arguable belief, they may be rejected." Langley v. Coughlin, 715 F. Supp. 522, 541 (S.D.N.Y. 1989) (citing, In Re Agent Orange, 611 F. Supp. At 1258-59).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-91 (1993) the Supreme Court stated that expert testimony is admissible under Rule 702 only when it is both relevant and reliable. In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court held that the criteria established in Daubert apply "not only to testimony based on 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho, 526 at 141.

In the instant case, Maisano's report is inadmissible because it is unreliable, speculative and not based on verifiable propositions of fact. Plaintiff proffers Maisano as a tree expert qualified to testify as to whether the Tree had a noticeable defect that would have been observable prior to the Limb falling from the Tree and whether the Tree was cabled properly. Maisano is not qualified to testify as to either of these issues. The reasons are obvious. The ability to testify as to whether the Tree had a visible defect or was cabled properly, if at all, requires a knowledge and inspection of the actual Tree and the cable. Maisano never inspected the Tree for the Plaintiff because by the time he was called to inspect the site, Gerald Murray, the Plaintiff's claim adjustor had decided to not preserve any part of the Tree. See, supra Part D.1. When Maisano first visited the site, almost three weeks after the Limb fell, the only remains of the Tree were logs stacked on the property, presumably (but never verified by Maisano) from the Tree. (Maisano Report, p.1, ¶ 1). In this regard, he admits that he could not examine the Tree and was limited to an examination of photos provided by Murray. Plaintiff's adjustor could have preserved the Tree and the cable for his expert's inspection but chose not to (Murray Tr. p.46, l. 20-24). In fact, Murray did not even photograph the cable, thereby leading to Maisano's confusion that the Tree was not cabled.

5

Additional admissions by Maisano amplify the lack of credibility of his findings. Maisano state that "some branches must have shown smaller leaves and dead branches." (Maisano Report p.2, ¶ 5). Not one witness, including Mr. and Mrs. Schulmeyer, the Plaintiff's adjustor or Orszulak, testified that smaller leaves and dead branches were observed on the Tree. Plaintiff can not provide any factual basis for this speculative claim made by Maisano.

Furthermore, in his report Maisano states "from the photo, there was no evidence of cable to support upper limbs. This cable would hold limbs together for support...heavy limb had minimal support and broke away causing damage to greenhouse." (Maisano Report, p.2, ¶¶ 3-4). Newington, Longo and Orzulak all testified that the Tree was cabled and that fact was admitted. (Plaintiffs 56(a)(2) Rep. ¶ 17). Therefore, Maisano's conclusion that the Tree was not cabled and had minimal support is factually wrong.

Newington submits that under these circumstances Maisano is not qualified to provide any expert testimony in this case as to any visible rot or decay on the Tree or as to the cabling in the Tree. His findings, which are, at best speculative, are unreliable and not based on verifiable facts. His report is therefore inadmissible as a matter of law. In Re Agent Orange, 611 F. Supp. at 1258-59.

    c.    **Even if considered admissible, Maisano's report refers to decay in the Tree.**

When Maisano first visited the site three weeks after the Limb had fallen, he made the following observations:

> The Tree that fell on the greenhouse was no longer on site. The branches, trunk and stump were gone leaving only the soil at the site of the Tree. As I looked for clues to the Tree for identification of the Tree, I found a pile of cut logs (14 in number). Upon examination of the logs many had **hollow centers with decay**. This indicated to me that this Tree had some **internal decay** problems in its branches. I continued to evaluate all the shrubs and Trees outside the greenhouse for their value.

(Maisano Report, ¶¶ 1 & 4). Maisano was then sent photographs taken by Plaintiff's adjustor. (Maisano Report, ¶ 5). Each comment made by Maisano about decay seen in the pictures refers to decay that could be seen after the Limb had split from the Tree:

> A photo of the trunk supplied to me of the stump grinding process shows the right side of the trunk with brown tissue indicating internal decay in the Tree base.

6

(Maisano Report, p.2, ¶ 6). Maisano does not state that the decay was visible on the outside of the Tree or that it could have been reasonably detected.

   2.   **Whether or not the Tree was cabled or had a "V" crotch is immaterial to providing evidence of Plaintiff's claim that Newington had actual or constructive notice of a defect in the Tree.**

In his Opp'n Brief, Plaintiff claims "the Tree's branches were not properly cabled or supported and its trunk was not reinforced in order to protect against the obvious dangerous conditions which existed because of the "V" crotch." (Opp'n Brief, p. 7). Plaintiff then states "Morano testified and Maisano opined in his report that they did not see any evidence of proper cabling." (Opp'n Brief, p. 7 citing Morano Tr. at p. 42, l. 5-11; Maisano Report). Plaintiff mischaracterizes Morano's testimony and Maisano's Report.

Neither Morano nor Maisano are qualified to opine as to the Tree's cabling since neither of them ever saw the Tree prior to the Limb falling. Neither Morano nor Maisano saw "evidence of proper cabling" because Murray chose not to photograph the cable in the fallen Tree Limb. The Tree was cabled, as testified to by Newington, Longo and Orszulak and as admitted in Plaintiff's 56(a)(2) Report, ¶ 17.

Plaintiff mischaracterizes Morano's testimony regarding a "V" crotch. Morano did not testify as Plaintiff claims "he would have placed a steel rod in the trunk of the Tree in order to reinforce it." (Opp'n Brief, p. 7 citing Morano Tr. at p. 31, l. 24-25; p. 32, l. 1-20). A careful reading of the testimony reveals Morano was referring to his own Tree, in his yard, which, upon being struck by lightening had split. Morano was not referring to the Tree at issue.

The fact that a Tree has a "V" crotch does not make it an "obvious dangerous condition" that would provide actual or constructive notice to a homeowner that a steel rod should or should not be put in the Tree where a split has not occurred. Neither Longo, Morano nor Orszulak, all licensed arborists ever recommended to a homeowner that a steel rod be inserted in a "V" crotch where there was not a split. (Longo Tr. 65, l. 5-13, Morano Tr. p. 32, l.2-20, Orszulak Tr. p. 27, l. 13-18).

7

C. **THERE IS NO LEGAL BASIS FOR PLAINTIFF'S CLAIM NEWINGTON IS LIABLE FOR THE ACTIONS OF RICHARD LONGO BECAUSE HE DID NOT MAINTAIN LIABILITY INSURANCE.**

In its Opp'n Brief, Plaintiff claims Newington as an homeowner was responsible for Longo as an independent contractor because (1) Longo can be considered an incompetent and untrustworthy contractor because he did not maintain any liability insurance; (2) Longo's work could result in a nuisance; and (3) Newington controlled the work that Longo did. (Opp'n Brief, pp. 14-16)

As to the first point, Plaintiff did not and cannot cite any case law to support his claim that contractors are incompetent and untrustworthy when they do not maintain liability insurance. Also, Newington did not know until <u>after</u> the Limb fell from the Tree and <u>after</u> the commencement of this lawsuit that Longo did not carry liability insurance. (Newington Tr. p. 13, 1.4-10). As to the second point, Plaintiff did not sue Defendant Newington for nuisance. This action merely sounds in negligence, and thus any reference to nuisance is not part of this action. As to the third point, Plaintiff admits in his Opp'n Brief on page 16, that Newington "looked at the Trees and determined when Longo was to be called." Plaintiff can not and did not cite any case law to support its claim that such a relationship leads to vicarious responsibility between a homeowner and an independent contractor.

D. **PLAINTIFF'S ADJUSTOR, GERALD MURRAY, FAILED TO PRESERVE THE TREE THEREFORE ANY CLAIM OF ADVERSE INFERENCE SHOULD BE FOUND IN FAVOR OF THE DEFENDANT NEWINGTON**

Murray did not take any steps to preserve the Tree because the Schulmeyers wanted the Tree removed and were adamant that the property be cleaned up as quickly as possible. (Murray Tr. p. 46, l. 20-24, Gerard Schulmeyer Tr. p. 29, 1.19-24). Murray had the opportunity to preserve the evidence during his initial visit prior to any part of the Limb or Tree itself being removed (Murray Tr. p. 49, l. 19-25, p. 50, l. 1-25, p. 51, l. 17).

Murray has been a claim adjustor since 1987. When asked about his normal procedure during the initial visit to a loss site, Murray testified that, if he can identify the cause of a loss and identify a responsible party, he refers the loss directly over to the subrogation department of Vigilant. (Murray Tr. p.

8

15, l. 7-23, 16-17). If Murray is not sure as to the subrogation potential then he may retain an expert to see if he can identify a cause of the loss (Murray Tr. p. 15, l. 14-22). Finally, there is the requirement at Vigilant, that any claim over $100,000 be reviewed internally by the subrogation department who, in turn, transfers the file to Cozen O'Connor for review (Murray Tr. p. 16, l. 6-12).

In this case, Murray did not refer the loss directly to the subrogation department nor did he immediately hire an expert. Murray's file notes for his initial inspection of the loss state:

> Cause of loss, a large Tree with rot at the intersection of two large branches split during calm conditions. No lightening in the area. The actual Tree is located on the property of the neighbor, but **no subrogation as the outward signs of the Tree is that it was in good condition**.

(Murray Tr. p. 38, l.11-16 ). Murray's source of information for his statement "no subrogation potential as the outward signs of the Tree is that it was in good condition" was based on Murray's own personal opinion based on his inspection (Murray Tr. p. 43, l. 5-6). Murray's further recollection is that there were "green leaves on the Tree...and there was rot within the Tree that was visible because the Tree was on the ground." (Murray Tr. p. 43, l. 16-25). Murray further testified:

> the debris that was on the ground had signs of rot within the Tree cavity or branch cavity...and that the leaves on the Tree were a green, indicating to me that it was fairly healthy as a layman.

(Murray Tr. p. 44, l.5-7).

Newington was not put on notice of the potential claim against her until she received a letter from Cozen O'Conner dated July 9, 2002- two months after the loss and one month after Cozen O'Conner were notified by Vigilant of the loss. By that time, the Tree had been removed. Because Newington signed an invoice which initially had been prepared for and signed by Schulmeyer prior to Newington agreeing to pay for the Tree removal, Plaintiff now makes a convoluted argument that Newington "directed" the Tree removal. In this case, Schulmeyer made the initial call to Alpine to remove the debris from the greenhouse and the Tree. Murray, who could have secured the Tree and Limb as evidence, determined it was in the Plaintiff's best interest to remove the debris and Tree as quickly as possible (Murray Tr. p. 46, l. 20-24).

9

## II. CONCLUSION

In this case, the Plaintiff has failed to meet its burden of establishing that the Defendant Newington had actual or constructive notice of any defective condition of the Tree. There is absolutely no evidence that there is a genuine issue of material fact as to any visible signs of decay or of a defective condition readily observable on the Tree prior to the incident in question. A tree owner owes no duty to the adjoining landowner to check her trees consistently and constantly, for nonvisible decay but is required to take reasonable steps to prevent harm only when decay is readily observable. Ivanicic v. Olmstead, 488 N.E. 2d 72 (1985).

**WHEREFORE,** as the Plaintiff has failed to raise a genuine issue of material fact regarding Defendant Newington's alleged negligence, Defendant Newington requests that her Motion for Summary Judgment be granted.

> **DEFENDANT**
> **BARBARA NEWINGTON**
>
> By: _____
> John H. Kane
> Fed. Bar #ct 12273
> E-mail: jkane@rc.com
> Robin P. Keller
> Fed. Bar # ct23564
> E-mail: rkeller@rc.com
> Robinson & Cole LLP
> 695 East Main Street
> Stamford, CT 06904
> Tel. No.: (203) 462-7500
> Fax No.: (203) 462-7599

## CERTIFICATION

This is to certify that on June 30, 2004, a copy of the foregoing was sent via first class mail to: Stuart G. Blackburn, Esq., Law Offices of Stuart G. Blackburn, Two Concorde Way, P.O. Box 608, Windsor Locks, CT 06096 and via federal Express to Robert M. Caplan, Esq., Cozen & O'Connor, The Atrium – Third Floor, 1900 Market Street, Philadelphia, PA 19103.

Robin P. Keller